PICTAD Overseas v. Helvetia Trust Mr. Carlson. May it please the Court. Thank you. My name is Curtis Carlson and I represent the two trusts that were the defendants below. I'll tell you what's been troubling me about this case. There are a lot of ways of looking at it, but if we look at the question whether the dispute arose in connection with the business activities of the partner, then the district court said that that meant that it had to be the business activities of the partner for this kind of business, right? That seems right to me. If that is right, it seems to be kind of has to be right, then I don't know that you really have a response to that. If that's right, then it resolves all the issues, so we don't even get into the other issues. So I actually think that it's correct to let's just get past the definition of customer. Let's get past the definition of associated person. The court was wrong. The court added language to those two definitions that it shouldn't have. In both King and Bornstein, the courts said that that the court in King said where something is unambiguous, you cannot consider parole evidence as to the intent. In fact, the court said in footnote three, you are prohibited. So I agree. Let's get past customer. The court was wrong. Let's get past the associated person, and let's go to the connection with. And I would use the same . . . It's the business activities of an associated person, though, as an associated person, isn't it? But you've just added language. You've done exactly like the district court. What kind of business activities are we talking about? So FINRA's . . . we're now going to be having arbitrations that have nothing to do whatsoever with the securities business? Yeah. Not necessarily, but let me say this. That clause does not use the word securities business activities. It doesn't say securities business activities, which is your point. And so the answer is the SEC . . . But it's not the business activity of an associated person if the business activity has nothing to do with being an associated person. I couldn't disagree more. And let me explain why. The SEC and FINRA are in charge. And they have said, and we cited in our brief, how this arbitration system is part of that regulation of people that are engaged in the securities business. And so let's say, for an instance, that an associated person defrauds somebody in connection with an insurance policy. It's not securities business, but it's an insurance policy. FINRA and the SEC want to know that. FINRA and the SEC want that dispute to be settled in arbitration, even though it's not a securities dispute. And I'm going to go one step further to show you how incorrect your premise is. There are many . . . these cases all seem . . . It's an automobile accident. An automobile accident would not be in connection with the business. They might very well have a business where it is, you know, involves driving cars. I would say that an automobile accident would not be in connection with the business. What if it's a business vehicle? It might be, but look, these are plain words. These are not hard to understand words. What do you say if the automobile accident involved a business vehicle? It's got . . . you've got to look at the words. The words are . . . That's their business activity, right? In connection with the business activities . . . Okay, it's a business vehicle. It's got to be in connection with the business . . . the dispute has to be with the associated person in connection with his business activities. Okay. It doesn't . . . the court added the phrase, in connection with the business activities of the member firm. It doesn't say that. You're to be in the business activities of the associated person. How are we to understand that? Well . . . If it has nothing to do with being an associated person. But it . . . I say this to you. Okay. It's plain, ordinary language. In King and in both Bornstein, although they were talking about customer, they said, use the plain and ordinary meaning of these words. That's it. Walk me through your answer to the trial court. When the trial court asks you . . . I don't think he used Mr. Smith. Mr. Smith owns a brokerage firm and he . . . it's in Switzerland. He goes to Africa and he commits a completely unrelated . . . completely unrelated to the brokerage firm securities fraud in Africa. Yes. You answered that arbitration would be required. Yes. Okay. Go through how you get there. Okay. I go there by . . . I'm going to repeat a little bit of what I said earlier. FINRA is charged by Congress with regulating the securities industry. They create various rules of conduct. This, by the way, has nothing to do with the Code of Arbitration Procedure. They have separate rules of conduct and behavior. They have rules that require member firms to supervise the activities of their associated persons wherever they are in the world. And so my point here is that, yes, if they committed some sort of act in Africa and it's in connection with the business activities of that person, the FINRA says member firms have to supervise the activities. So . . . and the supervising of activities is a business. So in that instance, they would have to arbitrate it because it's the business of the member firm. And the member firm is subject to arbitration because its business is to supervise its members. And if it failed to supervise the member in Africa, they have to arbitrate that. So you see Mr. Smith is the business, not the brokerage firm. No, no, no, no, no. The brokerage firm has to supervise Mr. Smith. And the brokerage firm in Switzerland is supervising Mr. Smith, doing a really good job. Mr. Smith goes to Africa, changes his name to Mr. Jones, and goes to a brokerage firm that's completely unrelated, not FINRA, and he is . . . FINRA comes in because of Mr. Smith, not because of the firm in Switzerland, is what you're saying. I don't follow your question, and I apologize. He has a brokerage firm in Switzerland. Mr. Smith does. And let's just say it, it is governed by FINRA, which I think would be your best argument. Then he goes, he changes his name to Mr. Jones, he goes in in Africa, and he has an unrelated, completely unrelated business. He commits a security fraud. He would be with a company that has nothing to do with FINRA. FINRA's not even known. But because he is doing it, then FINRA covers. Yes. Both the firm and he would have to arbitrate that dispute. Both of them would. And so brokerage firms have very sophisticated supervision systems. They monitor all emails. They monitor travel. You don't just get to go to Mexico or go to Africa, you've got to put in for it. You've got to tell the brokerage firm who you're going to be visiting with in those countries. So the brokerage firms supervise their employees, their associated persons, very, very carefully. And in that instance, you could argue that they failed to exercise reasonable care when they were supervising this person, and therefore he went off on this thing and did it. But the point here that I want to make is that all of these cases, you know, I say all of these cases, most of these cases where they're saying, well, we shouldn't have to arbitrate because they weren't our customer, most of those cases involved what's called selling away. Where the broker is doing something outside of the firm, the firm doesn't know about it, the money's not coming from the firm, it's not a product of the firm, they're selling something away from the firm. That's the standard, typical case. In fact, that was King and that was Bornstein. In Bornstein, they were selling biattical settlement agreements. In King, they were selling some investment in a company called Evergreen Securities. So always, they're doing something else outside the firm, the firm doesn't know about it. And it is the sale of securities. So here, we don't have to worry about whether we're in Africa or not, because here the partners have securities accounts, the trust had a securities account, money was stolen from the securities account, false statements were issued by the partners. This is all in connection with their activities as securities people. So that's why this should have been arbitrated. Alright, Mr. Carlson, you save five minutes for Mr. Hanchet. Good morning, judges. Mark Hanchet on behalf of the defendant, I'm sorry, the plaintiff in this case, Piquet Overseas and the individual partners. It's interesting that counsel focuses on the King and Bornstein cases because with respect to the question that is troubling Judge Pryor, the Bornstein case talks specifically about what that business activity needs to be. And I quote from the reported decision at page 1344 discussing King, the dispute arose in connection with IFG's business. It was very clear. The court goes on half a page later and says, the dispute arises in connection with the member's business. And a third time on 1345, this court said, the events arose in connection with Mone's business, Mone being the member once again. The very court and decisions that the trusts are relying upon actually spoke directly to the issues that Your Honors raised this morning and answered it conclusively. I would also commend to Your Honors' attention the decision of a court of appeals in California, Valentine Capital, that we cited and actually quoted from extensively in our briefing at 30 to 31 of our opposition brief. And in Valentine Capital, the very argument that's being pushed forward by the trusts in this case was considered, discussed, and rejected. And there were a number of reasons for rejecting. One is, of course, the plain language and the meaning of what's set forth in FINRA Rule 12-200. But more importantly, they talked about a policy concern. And I'm quoting from the decision at page 606, Your Honors. With this interpretation, FINRA and the registered representatives under its jurisdiction are assured that arbitration will pertain to matters with some nexus to the activity actually regulated by FINRA. Well, that makes perfect sense. FINRA is concerned about its business. It's not concerned about car sales in Africa, which was the example that the district court presented. This, and I continue the quote, this is nothing more than the common sense meaning of the plain language contained in Rule 13-200. It's a slightly different provision, but it's the same substantively. And any other interpretation would wrongly strip individuals of their civil jury trials concerning subject matter in which FINRA maintains no regulatory interest. In this case, Your Honors, I just want to remind you that the dispute, in fact, is between the trusts and a Swiss bank. And the contract that they signed when they opened the account stated that all disputes had to be resolved in the courts of Geneva, Switzerland. And they're trying to escape that contract, so it's kind of ironic that here we are, where they're insisting upon the sanctity of the FINRA Rule, which they characterize as a contract. At the same time, the very contract they signed, which clearly governs, they're trying to ignore. Your Honors, I'm happy to address many other issues. I was prepared to talk about lots of things, but I think we'll rest on our papers unless you have questions. Thank you. Mr. Carlson? Counsel raised a very interesting point that really backfires on him. He said that the arises in connection with business concept, where he was talking about the King case and the Bornstein case. What those courts said was supervising your associated persons is part of your business activities. And the court went on to say that, therefore, it arises in connection with the business activities of the member, the dispute did. That hurts their position. And so I go back to this. In King and Bornstein, the court said, look, you follow applicable state law in interpreting this. And the court said, in fact, in King, the court said, interpret the code as it would a contract under applicable state law. And it cited Perry, Supreme Court case. Giving effect, as it does when interpreting any contract, to the party's intent expressed by the ordinary meaning of the words they used. And here, the court said, because talking about the definition of customer, the court said it's plain, it's unambiguous. And when it's plain and unambiguous, you can't add language. And so when you look at the third prong, the in connection with prong, it simply says in connection with the business activities. It doesn't say securities business activities. And you are wanting to add a word in there that isn't... Business activities of an associated person. Right. That doesn't mean the business activities of an associated person have nothing to do with being an associated person. You're adding language there. I'm looking at all the language. I'm looking at business activities of an associated person. I would understand that to mean their business activities as an associated person. It doesn't say that. It says of the associated person. It doesn't say as an associated person. You're changing the meaning by doing that. But let's stop back for a second. Why are you wanting to change the meaning? FINRA and the SEC know what they're saying. There's something to be said for their point of stripping someone of their right to civil trial and instead forcing them into arbitration. Particularly where someone has signed an agreement to resolve their disputes arising from this contractual relationship in a particular legal forum. Well, but there's also this other agreement. That is, you have to arbitrate your dispute. There's two agreements. That's something that the arbitrators will consider. The Supreme Court has said over and over again that these are issues for the arbitrator. What we have here is a gateway issue. The gateway issue is you just look at the plain language and you don't add or delete words. One thing's for sure, Mr. Carlson. I do think we look at the plain language. I'm just not sure we have an agreement about what that means. All right. Thank you very much. Thank you, Mr. Carlson. We have your case and we are adjourned for the week. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.